UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

RHONDA PARIS,                           )
                                        )
      Plaintiff,                        )
                                        )
v.                                      )   No. 1:06-CV-98
                                        )   Chief Judge Curtis L. Collier
BILL SANSOM and BOARD OF                )
DIRECTORS OF TENNESSEE                  )
VALLEY AUTHORITY                        )
                                        )
      Defendants.                       )

## MEMORANDUM

Before the Court is Defendants Bill Sansom and Board of Directors of Tennessee Valley Authority's (collectively "Defendants") motion for summary judgment (Court File No. 21) and brief in support (Court File No. 23). Plaintiff Rhonda Paris ("Plaintiff") filed a response in opposition to Defendants' motion (Court File No. 27), and Defendants, in turn, filed a reply to Plaintiff's response (Court File No. 29). For the following reasons, the Court will **GRANT** Defendants' motion (Court File No. 21).

### I.   STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must

view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323.

The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

II. **RELEVANT FACTS**

Plaintiff was formerly employed with the Tennessee Valley Authority ("TVA") as a Clerk-Word Processor, SB-3, for Nuclear Assurance and Services, Administrative Services, in

Chattanooga (Court File No. 19, Part 4, Exhibit O, at 2). In June 1989, she received a Notice of Reduction in Force ("RIF"), effective July 31, 1989 (*id.*). The notice was not rescinded, and she was not selected for other vacancies (*id.*). In August 1989, Plaintiff contacted Patricia McKibben, an Equal Opportunity Counselor, alleging she had been discriminated against because of her race (*id.*). Plaintiff is African-American (*id.*). The issue was not resolved during counseling.

On October 27, 1989, Plaintiff filed a formal complaint of discrimination, and the TVA accepted for investigation Plaintiff's allegation she was discriminated against because of her race when she received her RIF notice (Court File No. 19, Part 5, Exhibit P, at 1). The allegation was investigated, and a final agency decision was issued on June 29, 1990, which found no discrimination (*id.*). The decision also discussed Plaintiff's related allegations concerning her nonselection for other positions, but no formal decision was made on the nonselections (*id.*).

Plaintiff appealed the final agency decision to the Merit Systems Protection Board ("MSPB"), but on November 1, 1990, the Administrative Judge dismissed the appeal because Plaintiff represented, through counsel, she no longer wanted to pursue the RIF issue (*id.*). Instead, she wanted to pursue her allegations regarding the nonselections (*id.*). Although the nonselection claims had not been formally accepted for investigation, Plaintiff had sought counseling on those issues (*id.*). As a result, the following issues were accepted for processing: Plaintiff's allegations she was discriminated against because of her race when (1) she was not selected for a six-month temporary Clerk, SB-3, position on or about July 31, 1989; and (2) she was not selected on Vacant Position Announcement ("VPA") No. 9616005 for a Clerk-Word Processor, SB-3, position in or about October 1989 (*id.*). Since an investigation of these issues was included as background information in the investigative record for the RIF issue, no additional investigation was done by

3

the Equal Opportunity ("EO") staff (*id.*).

On January 29, 1991, a Notice of Proposed Disposition finding no discrimination was issued (Court File No. 16, Part 3, Exhibit B, at 1). On February 7, 1991, Plaintiff requested a hearing before the Equal Employment Opportunity Commission ("EEOC") (*id.*). On February 13, 1993, the Administrative Judge, David E. Licht ("AJ Licht"), issued a recommended finding and conclusion, granting partial summary judgment on the issue of Plaintiff's nonselection for VPA No. 9616005 (issue two) with a finding of no discrimination (*id.*). On August 16, 1993, AJ Licht issued a recommended finding and conclusion granting partial summary judgment on the issue of Plaintiff's nonselection for the six-month temporary clerk position (issue one) with a finding of no discrimination (*id.* at 2). On October 18, 1993, the agency issued its Final Agency Decision ("FAD") concurring with AJ Licht in the grants of summary judgment (*id.*). On December 22, 1993, the agency issued an amended FAD clarifying the October 18 FAD, specifically finding no discrimination on issues one and two (*id.*). Plaintiff appealed the FAD to the Office of Federal Operations ("OFO") for the EEOC in Washington, D.C. (*id.*). The OFO issued an appellate decision on September 2, 1994, affirming the partial summary judgment on issue two, but reversed and remanded issue number one for a hearing (*id.*).

On June 27, 1996, a hearing was conducted by Administrative Judge James A. Carnes ("AJ Carnes"), EEOC, on Plaintiff's allegation she was not selected for a six-month temporary Clerk, SB-3 position on or about July 31, 1987 (*id.*). AJ Carnes issued a recommended decision ("RD") finding discrimination on that issue (*id.*). On February 13, 1997, the agency, in its FAD, adopted the RD (*id.*). As a remedy, the agency found Plaintiff was entitled to be offered a temporary six-month position of Clerk-Word Processor, SB-3; an award of back pay, interest, and benefits for the

six-month temporary position, beginning July 29, 1989 and ending approximately January 29, 1990; and reasonable attorney fees and costs (*id*. at 12). TVA complied with this order and paid Plaintiff back pay (plus interest) of $9,786.88 for the period from July 29, 1989, through January 29, 1990, and attorney's fees of $7,000 (Court File No. 18, Part 2, Exhibit C, at 4-5).

The case continued through the administrative process for six more years, due to two appeals[1] filed by Plaintiff, a motion for reconsideration filed by the agency, and two petitions for reinforcement filed by Plaintiff (Court File No. 18, Part 3, Exhibit L, at 2). On January 23, 2006, the EEOC decided the agency had complied with the EEOC's decision on Plaintiff's second appeal "when it offered Plaintiff a permanent SB-3 position, retroactive to January 29, 1990, with all applicable step and salary increases within the SB-3 classification and all resulting step and salary increases within the SB-4 classification from July 1989 (the date of the discrimination) to present" (*id*. at 4-5).

On July 8, 1997, while Plaintiff's administrative complaint was still pending, Plaintiff filed a petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Tennessee (Court File No. 19, Part 10, Exhibit U). Plaintiff did not list her claim against TVA in her Schedule of Assets nor did she list it in her Statement of Financial Affairs (*id*. at 8;21; 23). Plaintiff also failed to list the March 1997 payment of $9,786.88 that TVA made to her, although she was asked to reveal the "amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of this case" (*id*. at 21). Plaintiff's petition was fully

---

[1]As a result of the second appeal, TVA paid Plaintiff additional back pay and interest of $19, 486 (Exhibit C at 1).

discharged on October 23, 2003 (*id*. at 34).

## III. DISCUSSION

Defendants move for summary judgment on Plaintiff's claims stating (1) the RIF claims are not subject to judicial review because they are barred by equitable estoppel; (2) Plaintiff does not have standing to assert her race discrimination claim; and (3) this action is barred by judicial estoppel. Plaintiff argues her RIF claims are not barred by equitable estoppel because she has consistently made the same arguments for the past 16 years, and her action is not barred by judicial estoppel because there is no evidence of bad faith. Plaintiff made no arguments in response to Defendants' standing argument. The Court will discuss each of Defendants' arguments in turn.

### A. Equitable Estoppel

Defendants argue Plaintiff's RIF claims are not subject to judicial review and are barred by equitable estoppel. As support for this argument, Defendants state Plaintiff withdrew her claims regarding the RIF in July 1989, which resulted in the MSPB issuing a decision dismissing her RIF appeal. Since Plaintiff did not object to the dismissal of the RIF claims, Defendants argue her assertion of RIF claims in this action is contrary to the principal of estoppel. Plaintiff argues her position is not inconsistent. She states she does not challenge the RIF itself. Rather, she argues the failure of TVA to follow its own policy of selecting the individual at the top of the register was the discriminatory action at issue in this case.

"A party triggers equitable estoppel by conduct inconsistent with a position later adopted that prejudices the rights of the other party who detrimentally relied on the prior conduct." *Horton v. Ford Motor Co.*, 427 F.3d 382, 388 (6th Cir. 2005). A party claiming equitable estoppel must show:

> (1) conduct or language amounting to a representation of material fact; (2) awareness of true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Id*.

Defendants' equitable estoppel claim cannot prevail because they cannot show an inconsistent statement by Plaintiff upon which they relied to their detriment. While it is true Plaintiff withdrew her appeal as it related to her RIF claim, Plaintiff never stated she was not going to pursue the claim. In fact, she withdrew the RIF claim because it was not reviewable by the MSPB, and specifically stated she would pursue the claim through the discrimination complaint process. Although it has taken Plaintiff 16 years to pursue this claim, under these facts, the Court does not believe equitable estoppel should bar Plaintiff's claim.

### B.     Standing

Defendants argue Plaintiff lacks standing to bring her claims because the claims belong to the bankruptcy estate, *see* 11 U.S.C. § 541(a)(1), and therefore the bankruptcy trustee is the exclusive, proper party to bring this action. Plaintiff did not make any arguments in response to Defendants' argument she lacked standing.

The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has not yet ruled on whether the trustee in a Chapter 13 bankruptcy has exclusive standing to pursue causes of action. Other circuit courts, however, have held Chapter 13 debtors retain standing to pursue claims that are part of the estate. *See Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 474 (7th Cir. 1999) (holding a

Chapter 13 debtor-in-possession had standing to sue in his own name for the estate)[2]; *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515 (2d Cir. 1998) (Chapter 13 debtor retains standing to litigate causes of action that, outside of bankruptcy, would belong to the debtor); *Maritime Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1210 n. 2 (3d Cir. 1991) (noting "an essential feature of a chapter 13 case is that the debtor retains possession of and may use all the property of his estate, including pre-petition causes of action, pending confirmation of his plan."). At least one district court in the Sixth Circuit has agreed with these circuit cases. *See Smith v. ABN AMRO Mortgage Group, Inc.*, No. 1:06-cv-45, 2007 WL 950334, at *6 (S.D. Ohio Mar. 27, 2007) (finding Plaintiffs, who were Chapter 13 debtors, had standing to assert their claims).

Defendants rely on *Scott v. The Dress Barn, Inc.*, No. 04-1298-T-AN, 2006 WL 962534, *2 (W.D. Tenn. Apr. 12, 2006) for the proposition Plaintiff lacks standing. *Scott* relied on *Bauer v. Commerce Union Bank*, 859 F.2d 438 (6th Cir. 1998) and *Snyder v. United States*, 63 Fed. Cl. 762, 765 (Fed. Cl. 2005). The Court does not find *Scott* persuasive because it did not recognize the difference between Chapter 7 and Chapter 13 debtors nor did it recognize *Bauer* involved a Chapter 7 debtor. Although *Snyder* did involve a Chapter 13 debtor, the Court does not find it as persuasive as the circuit courts above because it, too, relied on a case involving a Chapter 7 debtor in stating "the power to assert . . . a claim [on behalf of the debtor] rests solely with the bankruptcy trustee." 63 Fed. Cl. at 765 (quoting *Tyler House Apartments, Ltd. v. United States*, 38 Fed. Cl. 1, 6 (1997)).

Furthermore, 11 U.S.C. § 1327(b) provides "except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the

---

[2]The Court notes in bringing this action Plaintiff is not bringing the action for the benefit of the estate. Rather, she is bringing it for her own benefit. Nonetheless, the Court still finds *Cable* helpful in that it shows Chapter 13 debtors retain some powers Chapter 7 debtors do not.

debtor." The order confirming Plaintiff's plan stated, "[p]roperty of the estate will revest in debtor upon completion of the Plan" (Exhibit U at 27). Plaintiff completed her plan on June 9, 2003. On that date, all property of the estate, including the claims pursued in this action, vested back to her. This suit was not filed until April 26, 2006. Thus, Plaintiff has standing to pursue this action.

### C. Judicial Estoppel

In the alternative, Defendants argue since Plaintiff failed to disclose her legal claim against the TVA to the Bankruptcy Court and her creditors, she should be judicially estopped from bringing such claims in this Court. Defendants argue Plaintiff has met the two factors for judicial estoppel of her claims because she (1) now asserts a position contrary to one that she asserted under oath in a prior proceeding, by asserting claims she swore she did not have in the Statement of Financial Affairs and Schedule of Assets; and (2) the Bankruptcy Court adopted the contrary position in its order confirming her Chapter 13 bankruptcy plan. Plaintiff argues she should not be judicially estopped from bringing these claims because she did not exhibit motive or intent to conceal this "potential" claim (Court File No. 27, Plaintiff's Response to Defendants' Motion for Summary Judgment ("Pl.'s Brief"), at 13). As such, Plaintiff argues there is no bad faith.

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (*quoting Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). This doctrine preserves "the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) (internal quotation omitted).

The Supreme Court has identified three considerations that are typically relevant in

determining whether judicial estoppel should apply: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceedings would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750-51 (internal quotations and citations omitted). In *Browning*, the Sixth Circuit, focusing on the first two factors identified in *New Hampshire*, described judicial estoppel as barring a party from "(1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." 283 F.3d at 775 (internal quotation omitted).

The Bankruptcy Code requires a debtor to file "a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." 11 U.S.C. § 521(1). There is no question a cause of action is an asset that must be scheduled under section 521(1). *See In re Cannon*, 277 F.3d 838, 853 (6th Cir. 2002); *In re RCS Engineered Prod. Co., Inc.*, 102 F.3d 223, 226 (6th Cir. 1996). In addition, "the duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (quotation omitted); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988) ("Viewed against the backdrop of the bankruptcy system and the ends it seeks to achieve, the importance of this disclosure duty cannot be overemphasized.").

As to the first factor, the Sixth Circuit has held pursuing a cause of action not disclosed as an asset in a bankruptcy filing creates an inconsistency sufficient to support judicial estoppel.

*Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 898 (6th Cir. 2004); *Browning*, 283 F.3d at 775. The Sixth Circuit also has held an order confirming a Chapter 13 plan adopts the debtor's statement he had no potential causes of action and will support a finding the second factor is met. *See Reynolds v. Comm'r of Internal Revenue,* 861 F.2d 469, 473 (6th Cir. 1988). Plaintiff does not dispute she did not disclose her claim against the TVA in her bankruptcy proceeding. It is also undisputed the bankruptcy court confirmed Plaintiff's Chapter 13 plan thereby adopting her contrary position. Therefore, the two prerequisites for the Court to apply the doctrine of judicial estoppel to Plaintiff's claims have been met.

However, Plaintiff argues her claims should not be barred by the doctrine of judicial estoppel because she did not exhibit any motive or intent to conceal this potential claim. Furthermore, Plaintiff argues "TVA has always been aware of both Plaintiff's pending matter before the EEOC and the bankruptcy as payment for Plaintiff's payment for the bankruptcy plan was made via payroll deduction through her paycheck at TVA." Pl.'s Brief at 13. In Plaintiff's affidavit, she states the mistake was inadvertent, and she cannot discuss this with her bankruptcy attorney because he is now deceased.

The Sixth Circuit has held "[j]udicial estoppel does not apply where the prior inconsistent position occurred because of 'mistake or inadvertence.'" *Lewis v. Weyerhaeuser Co.*, 141 Fed.Appx. 420, 425 (6th Cir. 2005) (quoting *Browning*, 283 F.3d at 776). The failure to disclose a cause of action may be deemed inadvertent where (1) "the debtor lacks the knowledge of the factual basis of the undisclosed claims," or (2) "the debtor has no motive for concealment." *Browning*, 283 F.3d at 776 (*citing In re Coastal Plains, Inc.*, 179 F.3d at 210)).

Based on the evidence presented, the Court finds Plaintiff's omission was not inadvertent.

11

Plaintiff clearly understood the factual basis of her claim against TVA since her claims were being pursued through the administrative process when she filed her petition for Chapter 13 bankruptcy. In fact, just four months before she filed for bankruptcy, Plaintiff had received a payment of $9,786.88 from TVA in connection with her claim. Moreover, Plaintiff had motive to conceal her claim since, as the *Lewis* court noted, "it is always in a Chapter 13 petitioner's interest to minimize income and assets." 141 Fed.Appx. at 426. This is especially true in Plaintiff's situation since a review of Plaintiff's Schedule F form shows the debts she owed creditors holding unsecured nonpriority claims totaled $9,088.00, and the payment she received from TVA in March 1997 totaled $9,786.88 (Exhibit U at 13-14). If Plaintiff had revealed this information, it may have called into question whether she was even eligible for bankruptcy protection since four months prior to filing for bankruptcy she had the money to pay half of her creditors in full.

Even though the Court concludes Plaintiff's omission was not the result of "mistake or inadvertence," Plaintiff's claims are not necessarily barred. The Sixth Circuit has held "absence of bad faith" is another factor to be considered in determining whether to apply the doctrine of judicial estoppel. *Eubanks,* 385 F.3d at 895. In *Eubanks*, the court did not apply judicial estoppel although the plaintiff's claim against the defendant was not included on the schedule of assets because the plaintiff took several affirmative steps to make the bankruptcy court and the bankruptcy trustee aware of the existence of the claim before the bankruptcy action was closed. *Id*. at 898-99. The affirmative steps included: (1) notifying the bankruptcy trustee of the claim during a meeting; (2) asking the trustee on several occasions over several months whether he intended to pursue the claim on behalf of the estate; (3) requesting the bankruptcy court to hold a status conference on the issue of the claim; (4) unsuccessfully moving to allow the trustee to be substituted for themselves in the

action after the action was filed and after the trustee refused to abandon the claim in the bankruptcy proceeding; and (5) filing an amendment to their original bankruptcy petition to add the claim to their bankruptcy schedules after the defendant filed a motion to dismiss on the basis of judicial estoppel. *Id.* at 895-97.

In stark contrast to the debtors in *Eubanks*, Plaintiff took absolutely no steps to alert the bankruptcy court of her claims against the TVA even though they were simultaneously being pursued through the administrative process. Plaintiff states in her affidavit she was unsure the questions on her Statement of Financial Affairs and Schedule of Assets form referred to any claims she had with TVA. This argument is insufficient to show absence of bad faith since the fact Plaintiff was represented by counsel in her bankruptcy proceedings undercuts any possibility Plaintiff's omission was due to lack of understanding the question. *See Wallace v. Johnston Coca-Cola Bottling Group, Inc.*, et al., No. 1:06-cv-875, 2007 WL 927929, at *2 (S.D. Ohio Mar. 26, 2007) (rejecting the plaintiff's argument the omission was due to lack of understanding of the bankruptcy process because the plaintiff was represented by counsel). Therefore, the Court finds Plaintiff's claims are barred by the doctrine of judicial estoppel. *See Lewis*, 141 Fed.Appx. at 426 (applying judicial estoppel where plaintiff alleged only "minimal efforts" to inform the bankruptcy court of her civil action, which were not sufficient under *Eubanks* to establish her omissions were inadvertent); *Salyer v. Honda of Am. Mfg, Inc.*, No. 2:04-CV-988, 2006 WL 3230807, at *7-8 (a debtor's failure to disclose a pending suit was indicative of a deceitful motive and thus judicial estoppel was applicable). Accordingly, Defendants' motion for summary judgment will be

**GRANTED** on this ground.[3]

IV. **CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Defendants' motion for summary judgment on the grounds of judicial estoppel (Court File No. 21), and **DISMISS** all of Plaintiff's claims. The Court will also direct the Clerk to **CLOSE** the case.

An order will enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[3]Since the Court finds the doctrine of judicial estoppel bars this action, there is no need to address the remedy issue or Plaintiff's motion for partial summary judgment.